# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |
|---|---|
| THERESA JAMES, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | )  Case No. 14-cv-02147 (APM) |
|  | ) |
| DISTRICT OF COLUMBIA, | ) |
|  | ) |
| Defendant. | ) |

_____ )

## MEMORANDUM OPINION

## I.    INTRODUCTION

Plaintiff Theresa James, acting on behalf of her minor granddaughter, V.J., seeks an award of attorneys' fees and costs under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.*, for her counsel's successful representation of V.J. in the instant litigation and in administrative proceedings. Plaintiff contends that she is entitled to $93,676.78 in fees and costs. Defendant District of Columbia does not contest Plaintiff's status as a prevailing party under the IDEA or the number of hours spent by her counsel to represent V.J., but does assert that the proposed hourly rates for Plaintiff's counsel are not supported by adequate evidence and, therefore, are unreasonable. Defendant also challenges the reasonableness of the copying costs sought by Plaintiff in her fees petition. Defendant asks the court to award Plaintiff no more than $62,821.63 in fees and costs.

After considering the parties' submissions and the relevant law, the court grants in part and denies in part Plaintiff's Motion for Attorney Fees. The court awards attorneys' fees and costs to

Plaintiff, calculated at an hourly rate of 75% of the United States Attorney's Office Matrix, in the amount of $75,286.78.

## II.    BACKGROUND

The court described the factual and procedural background of this case in its previous opinion, which resolved the parties' cross-motions for summary judgment and remanded for further administrative proceedings, and it need not repeat those details here.  *See generally James v. District of Columbia*, 194 F. Supp. 3d 131 (D.D.C. 2016).  On remand, the Hearing Officer made several new findings and ordered relief in favor of Plaintiff's granddaughter, V.J., in a variety of forms, including a comprehensive psychological evaluation and speech-language evaluation, a revised Individualized Education Program, compensatory education services, and declaratory relief.  Pl.'s Mot. for Fees & Costs, ECF No. 27 [hereinafter Pl.'s Mot.], at 3; *see* Def.'s Mem. in Opp'n to Pl.'s Mot. for Fees & Costs, ECF No. 29 [hereinafter Def.'s Opp'n], at 3; *see also* Pl.'s Mot., Ex. 1, ECF No. 27-2, at 10–11.  Thus, Plaintiff succeeded in securing the relief that she sought for V.J.  *See generally* Compl., ECF No. 1, at 3–4.

Thereafter, on May 18, 2017, Plaintiff filed a motion requesting $93,676.78 in attorneys' fees and costs.  *See generally* Pl.'s Mot.  Defendant District of Columbia opposed Plaintiff's motion on June 26, 2017, claiming that Plaintiff is not entitled to the full award that she seeks.  *See* Def.'s Opp'n.  Plaintiff's motion is now ripe for consideration.

## III.    LEGAL STANDARD

The IDEA provides "a fee-shifting provision entitling a prevailing party . . . to reasonable attorneys' fees."  *Price v. District of Columbia*, 792 F.3d 112, 113 (D.C. Cir. 2015) (internal quotation marks omitted).  A "court, in its discretion, may award reasonable attorneys' fees as part of the costs . . . to a prevailing party who is the parent of a child with a disability."  20 U.S.C.

§ 1415(i)(3)(B)(i). An IDEA fee award "shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." *Id.* § 1415(i)(3)(C). If the court finds, however, "that 'the amount of the attorneys' fees otherwise authorized to be awarded unreasonably exceeds the hourly rate prevailing in the community for similar services by attorneys of reasonably comparable skill, reputation, and experience,' it 'shall reduce . . . the amount of the attorneys' fees awarded.'" *Eley v. District of Columbia*, 793 F.3d 97, 99 (D.C. Cir. 2015) (alteration in original and emphasis omitted) (quoting 20 U.S.C. § 1415(i)(3)(F)(ii)).

Because the IDEA "provides no further guidance for determining an appropriate fee award," *id.* at 100, the D.C. Circuit applies a "two-part framework" to determine whether an award of attorneys' fees is "reasonable" under the statute's fee-shifting provision, *see Reed v. District of Columbia*, 843 F.3d 517, 520 (D.C. Cir. 2016). This framework takes into account "(1) the 'number of hours reasonably expended in litigation'; and (2) the 'reasonable hourly rate' for the services provided." *Reed*, 843 F.3d at 520 (quoting *Eley*, 793 F.3d at 100).

The burden of establishing entitlement to a fee award under the IDEA rests with the fee applicant. *See id.* The applicant must establish that she qualifies as a prevailing party, document the appropriate hours spent by counsel, and justify the reasonableness of the rate requested. *See id.* at 520–21; *cf. Covington v. District of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995) (explaining burden-shifting in the context of a fees petition under 42 U.S.C. § 1988). Once the applicant has shown that the claimed rate and hours are reasonable, the resulting sum is presumed to be a reasonable fee. *See Covington*, 57 F.3d at 1109. At that point, the defendant can challenge the request for attorneys' fees, but it must do so with "specific contrary evidence tending to show

that a lower rate would be appropriate." *Flood v. District of Columbia*, 172 F. Supp. 3d 197, 203 (D.D.C. 2016) (quoting *Covington*, 57 F.3d at 1109–10).

## IV. DISCUSSION

Plaintiff in this case seeks an award of fees for the services of two attorneys: Nicholas Ostrem and Douglas Tyrka. *See* Pl.'s Mot., Ex. 2, ECF No. 27-3 [hereinafter Billing Itemization]; Pl.'s Mot., Ex. 3, ECF No. 27-4 [hereinafter Ostrem Decl.]; Pl.'s Mot., Ex. 4, ECF No. 27-5 [hereinafter Tyrka Decl.]. Both Ostrem and Tyrka practice in Washington, D.C. Ostrem Decl. ¶ 10; Tyrka Decl. ¶¶ 11–12. Ostrem is a solo practitioner and represented Plaintiff in the administrative proceedings underlying this case. Ostrem Decl. ¶¶ 2, 15. Tyrka is the sole owner of the law firm Tyrka & Associates, LLC, and functions primarily as a solo practitioner. Tyrka Decl. ¶¶ 2, 42. From his billing records, it appears that Tyrka represented Plaintiff only in the federal court litigation. *See* Billing Itemization at 36–37. Plaintiff seeks an hourly rate of $395 for Ostrem and $516 for Tyrka. *See* Billing Itemization. These rates align with the rates for lawyers of comparable years of experience as reflected in the United States Attorney's Office ("USAO") Attorney's Fees Matrix [hereinafter "the USAO Matrix"]. Pl.'s Mot. at 9; *see* Pl.'s Mot., Ex. 11, ECF No. 27-12 [hereinafter USAO Matrix]. The USAO Matrix is a matrix of hourly billing rates for attorneys and paralegals/law clerks maintained by the Civil Division of the U.S. Attorney's Office for the District of Columbia. *See* USAO Matrix at 1 n.1. The rates in the matrix "were calculated from average hourly rates reported in 2011 survey data for the D.C. metropolitan area, which rates were adjusted for inflation with the Producer Price Index-Office of Lawyers (PPI-OL) index." *Id.* at 1 n.2.

Defendant challenges only the reasonableness of the attorneys' fees and costs sought by Plaintiff. *See id.* at 6, 18–19. Starting with the attorneys' fees, Defendant makes two basic

objections. First, Defendant argues that Plaintiff has provided "insufficient evidence that the hourly rate in the USAO Matrix is the 'prevailing market rate' for attorneys practicing IDEA law in the District," and that Plaintiff's counsel's invoice inappropriately relies on current rather than historical market rates. *Id.* at 1, 15–17. Defendant proposes that Plaintiff's attorneys' hourly rates should not exceed 75% of the USAO *Laffey* or USAO Matrix rates, respectively, depending on the time period in which the services were performed.[1] *See id.* at 19–22. Second, Defendant asserts that the attorneys' hours were not "reasonably expended" because Plaintiff's counsel's invoice bills at an inappropriate rate for travel and for the preparation of her fees petition. *Id.* at 17. But that contention actually is no more than a plea that the court apply a reduced hourly rate to counsel's travel time and fees litigation work. *See id.* at 13, 20. Thus, Defendant's two objections largely merge into one challenge to the reasonableness of the hourly rate. So, the court considers the two objections in tandem. Finally, Defendant also asserts that Plaintiff "cannot demonstrate the reasonableness of certain expenses." *See id.* at 17. The only expense Defendant challenges, however, is Plaintiff's rate for copying costs. *Id.*; *see also id.* at 18–19 (arguing that $0.25 is

---

[1] The "*Laffey* Matrix," as established in *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983), *aff'd in part, rev'd in part on other grounds*, 746 F.2d 4 (D.C. Cir. 1984), recommended a presumptive maximum hourly rate for attorneys engaged in "complex federal litigation." *See* 572 F. Supp. at 372–74; Def.'s Opp'n at 10; Pl.'s Reply Regarding Fees & Costs, ECF No. 32, at 5. The "*Laffey* Matrix" eventually "spawned two versions": (1) a version maintained by the USAO, which was adjusted for inflation, as measured by the Consumer Price Index for the Washington-Baltimore area, *Flood*, 172 F. Supp. 3d at 202 n.1; *see* USAO Matrix at 2 n.4, and (2) "an 'enhanced' version, first approved in *Salazar v. District of Columbia*, 123 F. Supp. 2d 8 (D.D.C. 2000), which is adjusted for inflation using the more rapidly rising Legal Services Index of the nationwide Consumer Price Index ('*Salazar*/LSI Matrix')," *Flood*, 172 F. Supp. 3d at 202 n.1; *cf.* Ostrem Decl. ¶ 8; Tyrka Decl. ¶ 8. The former is often referred to as "the USAO *Laffey* Matrix." The USAO, however, began using the PPI-OL index to adjust for inflation starting with the 2015–2016 year. *See* USAO Matrix at 2 n.4. For that reason, the current USAO rates matrix is known as the USAO Matrix, instead of the USAO *Laffey* Matrix.

    Although Plaintiff's counsel attest that their firms customarily charge hourly rates matching those in the *Salazar*/LSI Matrix, which are "considerably higher" than the rates set out in the USAO Matrix, Plaintiff only requests that the court award fees based on the USAO Matrix. *See* Pl.'s Mot. at 8; Ostrem Decl. ¶ 8; Tyrka Decl. ¶ 8. Defendant also relies upon the current USAO Matrix to calculate Plaintiff's attorneys' fees (albeit at a lesser percentage). *See* Def.'s Opp'n at 6, 20–22. Because Defendant urges the court to apply matrix rates that were applicable at the time the services were performed in calculating Plaintiff's fees, however, *see id.* at 15–17, Defendant also relies upon historical USAO *Laffey* Matrix and USAO Matrix rates, *see id.* at 19–22. *Compare* USAO Matrix, *with* Def.'s Opp'n, Ex. 3, ECF No. 29-3.

excessive and $0.15 is a more appropriate rate).

The court addresses each of these issues below, starting with the reasonableness of the hourly rate (and thus the overall attorneys' fee award), and then turning to the reimbursement rate for Plaintiff's copying costs.

## A. Reasonable Hourly Rate for Attorneys' Fees

To be reasonable, an IDEA fee award must be "based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." 20 U.S.C. § 1415(i)(3)(C); *see id.* § 1415(i)(3)(B)(i). "Whether an hourly rate is reasonable turns on three sub-elements: (1) 'the attorney['s] billing practices,' (2) 'the attorney['s] skill, experience, and reputation' and (3) 'the prevailing market rates in the relevant community.'" *Eley*, 793 F.3d at 100 (alterations in original) (quoting *Covington*, 57 F.3d at 1107). All that is in dispute here is the last, and perhaps most important, element: the prevailing market rates in the relevant community. *See* Def.'s Opp'n at 6–15.[2] As noted above, the parties not only disagree as to the prevailing market rate for the work performed in the underlying litigation and administrative proceedings, but they also disagree as to whether that rate differs for work performed in preparing the fees petition (so-called "fees-on-fees"), *see id.* at 17–18, and whether the fee award should be calculated using current, as opposed to historical, rates, *see id.* at 15–17.

---

[2] Defendant also appears to challenge Plaintiff's evidence of the first element used to determine a reasonable hourly rate—the attorneys' billing practices. *See* Def.'s Opp'n at 6–9. But to the extent Defendant raises this challenge, it does so in the context of arguing that Plaintiff cannot satisfy her burden to establish that the USAO Matrix represents the prevailing market rate for IDEA litigation. *See id.* Thus, the court will address this argument in its discussion of the prevailing market rate. Defendant does not, however, challenge Plaintiff's evidence as to the second element—the attorneys' skill, experience, and reputation. *See* Pl.'s Mot. at 14; *cf.* Def.'s Opp'n at 6–15. Having reviewed the declarations of Plaintiffs' attorneys Ostrem and Tyrka, and given the court's knowledge of Mr. Tyrka's reputation in particular, the court finds Plaintiff has adequately demonstrated the skill, experience, and reputation of Plaintiffs' attorneys in the field of IDEA litigation. *See* Ostrem Decl. ¶¶ 10–11, 13; Tyrka Decl. ¶¶ 11–13.

1. *Prevailing Market Rate*

Determining the prevailing market rate is "inherently difficult." *Eley*, 793 F.3d at 100 (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). To establish the prevailing market rate, a fee applicant must "produce satisfactory evidence—*in addition to [her] attorney's own affidavits*—that [her] requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Id.* at 104 (emphasis added) (quoting *Covington*, 57 F.3d at 1109).

Such evidence can take one of two forms. *See Lee v. District of Columbia*, No. 15-cv-1802, 2018 WL 400754, at *6 (D.D.C. Jan. 12, 2018) ("[T]he Circuit [has] explained that litigants have relied on 'two separate, but inter-related, approaches to providing evidence of prevailing market rate.'" (quoting *Reed*, 843 F.3d at 521)); *see also Wimbish v. District of Columbia*, 251 F. Supp. 3d 187, 191 (D.D.C. 2017). "First, a litigant can show that IDEA litigation 'fall[s] within the bounds' of 'complex federal litigation' and therefore the USAO *Laffey* Matrix[,] now the USAO Matrix, . . . presumptively sets forth the prevailing market rate for IDEA representation." *Lee*, 2018 WL 400754, at *6 (quoting *Reed*, 843 F.3d at 521, 524–25). "Alternatively, a fee applicant can 'establish the prevailing market rate by providing evidence of the fees charged, and received, by IDEA litigators.'" *Id.* (quoting *Reed*, 843 F.3d at 521). Importantly, this second method of establishing the prevailing market rate "is *not* conceptually linked to the *Laffey* Matrix." *Id.* (quoting *Reed*, 843 F.3d at 521).

Plaintiff invokes the second method of establishing the prevailing market rate, asserting that her requested rates for Ostrem and Tyrka are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." [3] *See*

---

[3] This court invites IDEA practitioners to show that IDEA litigation constitutes complex federal litigation, even though the court in *Reed* observed that to do so "will not be easy." *Reed*, 843 F.3d at 525. Here, Plaintiff submitted a

Pl.'s Mot. at 6 (internal quotation mark omitted); *see also id.* at 6–14. To successfully make this showing, she must rely on more than her own attorneys' affidavits and/or the *Laffey* matrices. *See Eley*, 793 F.3d at 104; *Reed*, 843 F.3d at 521. Instead, she must supplement any such evidence with additional evidence, such as "surveys [that] update [the fee matrices]; affidavits reciting precise fees that attorneys with similar qualifications have received from fee-paying clients in comparable cases; and evidence of recent fees awarded by the courts or through settlement to attorneys with comparable qualifications handling similar cases." *See Eley*, 793 F.3d at 101.

In this case, Plaintiff attaches to her Motion the following proof to justify the hourly rates she proposes: (1) her counsel's declarations; (2) an itemization of the tasks performed, hours expended, and rates charged by her counsel in this case; (3) declarations from five attorneys who practice special education law; (4) various attorney fees matrices; (5) a Statement of Interest filed by the United States in a different IDEA case, *Eley v. District of Columbia*, 201 F. Supp. 3d 150 (D.D.C. 2016), which discusses the *Laffey* matrices; (6) a survey of attorneys who practice IDEA litigation; and (7) two exhibits submitted in support of a fees petition in another IDEA case in this district, *Thomas v. District of Columbia*, 908 F. Supp. 2d 233 (D.D.C. 2012), which relate to Defendant's practices regarding the payment of attorneys' fees in IDEA cases. Plaintiff also asks the court to consider, by reference: (1) five IDEA cases in which courts awarded full USAO *Laffey* rates, two of which were decided after the Circuit's decision in *Reed*, *see* Pl.'s Mot. at 11;

---

declaration of a special education lawyer in the District with considerable IDEA experience who, in the court's view, quite convincingly suggests that IDEA cases are complex. *See* Pl.'s Mot., Ex. 8, Verified Statement of Maria G. Mendoza, ECF No. 27-9, ¶¶ 2–6. Additional declarations, perhaps combined with expert testimony, might be sufficient to make out the necessary showing. *Cf. Reed*, 843 F.3d at 525 (concluding that the district court "did not abuse its discretion in holding that, while [the plaintiffs] may have demonstrated that IDEA proceedings are complicated 'in some sense,' they fell short of establishing that 'such matters are complex federal litigation,' as this court has held they must" (citation omitted)); *id.* (explaining that the *six* attorney affidavits proffered by plaintiffs were "insufficient to demonstrate that IDEA cases involve complex federal litigation"). In this case, Plaintiff mentions the complexity argument only in passing in her reply brief and, in doing so, admits that she does not actually *advance* that argument. *See* Pl.'s Reply Regarding Fees & Costs, ECF No. 32, at 5 n.3 ("Ms. James does not concede the complexity issue.").

(2) statistics regarding the declining number of administrative complaints filed with District of Columbia Public Schools ("DCPS"), *see id.* at 14; and (3) a report filed by the class-action monitor in *Blackman v. District of Columbia*, No. 97-cv-1629 (D.D.C.).

None of this evidence, however, even when taken together, successfully establishes that the prevailing market rates for IDEA litigators in the District of Columbia are those reflected in the USAO Matrix.

The court begins with the Plaintiff's declarations from other IDEA practitioners in the District, Charles Moran and Stevie Nabors, in which each lawyer says that he now charges the USAO Matrix rate. *See* Pl.'s Mot., Ex. 5, Decl. of Charles A. Moran, Esq., ECF No. 27-6 [hereinafter Moran Decl.]; Pl.'s Mot., Ex. 6, Decl. of Stevie Nabors, Esq., ECF No. 27-7 [hereinafter Nabors Decl.]; *see also* Pl.'s Reply Regarding Fees & Costs, ECF No. 32 [hereinafter Pl.'s Reply], at 4 n.2 (noting that the only declarations offered in support of rates earned on the market were from her counsel Tyrka and attorneys Moran and Nabors). This court recently confronted virtually identical declarations in *Lee* and concluded that Moran and Nabors had failed to demonstrate whether they charged—*and received*—the USAO Matrix rates from hourly-paying clients. 2018 WL 400754, at *5; *see also Flood*, 172 F. Supp. 3d at 213 ("[E]vidence of rates typically 'charged' by IDEA attorneys provides relatively little insight into the rate these attorneys could command in a more traditional market for legal service."). Thus, for the same reasons the court found these declarations insufficient to establish the attorneys' billing practices in *Lee*, *see* 2018 WL 400754, at *5, the court finds these declarations insufficient to establish the prevailing market rate here.[4]

---

[4] As noted above, Plaintiff also relies on Tyrka's declaration to establish the prevailing market rate. Pl.'s Reply at 4 n.2. Tyrka's declaration is more detailed. Tyrka says that his firm has always charged hourly rates that align with those set out in the *Salazar*/LSI Matrix, *see* Tyrka Decl. ¶ 8, which are "considerably higher" than the USAO Matrix rate requested in this case, Pl.'s Mot. at 8; *see* Pl.'s Mot., Ex. 7, ECF 27-8. He also attests that "the firm has had

The same fate befalls the rest of the statements made by Moran and Nabors in their declarations. Both attorneys attest that their firm has twice surveyed fellow IDEA practitioners and found that they too charge USAO Matrix rates. *See* Moran Decl. ¶¶ 6–7; Nabors Decl. ¶¶ 4–5. In a similar vein, both assert that they agree with the conclusion reached in a market survey discussed by the USAO in its Statement of Interest filed in the *Eley* case post-remand, *see* Moran Decl. ¶ 8; Nabors Decl. ¶ 6; *see also* Pl.'s Mot., Ex. 12, ECF No. 27-13. The court found this evidence insufficient to establish the prevailing market rate in *Lee*, and there is no reason to revisit that decision here. *See* 2018 WL 400754, at *7.

Next, Plaintiff points to the USAO Matrix itself. *See* Pl.'s Mot. at 9. To be sure, in *Eley*, the D.C. Circuit recognized that fee matrices may serve as a "useful starting point in calculating the prevailing market rate." 793 F.3d at 100 (internal quotation mark omitted). But as noted above, the Circuit's more recent decision in *Reed* makes clear that a plaintiff must offer proof of the prevailing market rate that is independent of the USAO *Laffey* Matrix, absent a showing of complexity. *See generally Lee*, 2018 WL 400754, at *6 ("[I]n the absence of a finding that IDEA cases command the same rates as complex federal litigation, the '*Laffey* Matrix rates are *irrelevant* to the prevailing-rate determination.'" (quoting *Reed*, 843 F.3d at 521)). Plaintiff attempts to side-step this requirement by making a definitional argument. Plaintiff contends that the USAO Matrix—unlike the *Laffey* Matrix and its subsequent revisions, including the USAO *Laffey* Matrix, *see Reed*, 843 F.3d at 521—was not intended to apply to complex federal litigation alone. Pl.'s Reply at 4–7; *cf.* Pl.'s Mot. at 9–11. But that contention is belied by the USAO Matrix itself,

---

several clients pay the firm at the LSI *Laffey* Matrix rates directly," Tyrka Decl. ¶ 9, and suggests that many of his current clients are fee-paying clients, *see id.* ¶ 44. But whatever the probative value of Tyrka's declaration, the law is clear that Plaintiff must produce evidence "*in addition to* the attorney's own affidavits." *Eley*, 793 F.3d at 100. Plaintiff acknowledges as much in her Reply. *See* Pl.'s Reply at 3. Thus, Tyrka's declaration, without more, is insufficient evidence of the prevailing market rate.

which simply discusses a change in the methodology used to calculate fees, *see* USAO Matrix at 2 n.4, and makes absolutely no mention of any intent to broaden the application of the matrix. Indeed, it suggests just the opposite. *See id.* at 2 n.5 (noting that while the USAO will no longer issue updated *Laffey* matrices using the prior methodology, it will not oppose the use of such prior methodology "to calculate reasonable attorney's fees under applicable fee-shifting statutes after May 2015").

More importantly, any doubt about whether the USAO Matrix is intended to apply to complex federal litigation is answered by the United States' Statement of Interest in a recent IDEA case, *D.L. v. District of Columbia*, 267 F. Supp. 3d 55 (D.D.C. 2017), *appeal docketed*, No. 18-7004 (D.C. Cir. Jan. 17, 2018). *See* Def.'s Opp'n, Ex. 1, ECF No. 29-1. In *D.L.*, the USAO stated succinctly that "the USAO Matrix is properly regarded as the benchmark for hourly billing rates for *complex federal litigation* in this jurisdiction." *Id.* at 15 (emphasis added).

Plaintiff offers two other types of evidence to establish that the prevailing market rates for IDEA work in the District of Columbia are in fact reflected in the USAO Matrix. First, she cites several recent IDEA cases in this District Court in which judges have awarded USAO Matrix rates. Pl.'s Mot. at 11. But many of those cases relied heavily upon declarations that, by and large, stated that IDEA practitioners bill time at the USAO Matrix rate or higher, without any elaboration. *Lee*, 2018 WL 400754, at *7. As this court explained in *Lee*, the probative value of those declarations is questionable in light of *Reed*. *Id.* Thus, as in *Lee*, the court finds those cases unavailing here.[5] Moreover, even were the court to credit these cases, *see Flood*, 172 F. Supp. 3d at 214 (explaining that the D.C. Circuit has consistently held that evidence of prior fee awards help inform the court's

---

[5] The court reaches the same conclusion as to *Daniels v. District of Columbia*, No. 14-cv-665, 2017 WL 1154948 (D.D.C. Mar. 27 2017), and *Joaquin v. District of Columbia*, 210 F. Supp. 3d 64 (D.D.C. 2016), which were not discussed by this court in *Lee*.

attempt to identify a prevailing market rate (citing *Eley*, 793 F.3d at 101)), they are too few in number to meet Plaintiff's burden of establishing the prevailing market rate, *see Dobbins v. District of Columbia*, No. 16-cv-2297, 2017 WL 7510879, at *9 (D.D.C. Oct. 24, 2017). This is particularly true because "an overwhelming number of cases" in this district have awarded "IDEA fees [that] adopt rates equivalent to seventy-five percent of *Laffey* Matrix rates." *Cox v. District of Columbia*, 264 F. Supp. 3d 131, 145 (D.D.C. 2017); *see also id.* at 147–48 (finding no reason to depart from such cases and awarding 75% of the *Laffey* or USAO Matrix rates).

The second type of evidence relied upon by Plaintiff is a survey regarding the hourly rates earned by IDEA practitioners in this area. Pl.'s Mot. at 11–12; *see* Pl.'s Mot., Ex. 13, Verified Statement of Dr. Andrea R. Berger, ECF No. 27-14 [hereinafter Berger Decl.], ¶¶ 4, 7, 9. Plaintiff's attorneys commissioned this survey from Dr. Andrea Berger, "an expert in survey design and implementation." Pl.'s Mot. at 12; *see* Berger Decl. ¶¶ 3–4. Dr. Berger found that, when she placed the surveyed lawyers in the same experience groups as the USAO Matrix, the rate for almost every group was within 6% of the USAO Matrix, and the rate for Plaintiff's counsel was within 5% of the Matrix. Berger Decl. ¶ 13.

Dr. Berger's evidence is the type of evidence that gets Plaintiff closer to satisfying her burden, but it does not get her close enough. "A statistically reliable, well-documented, and extensive survey of the rates clients pay for a certain sub-market of legal services [can] be powerfully persuasive." *Eley*, 793 F.3d at 104 n.5 (quoting *Covington*, 57 F.3d at 1113 (Henderson, J., dissenting)). But in this case, Dr. Berger fails to state how many attorneys she contacted as a part of the survey, *see* Berger Decl. ¶ 8; how many attorneys actually responded to her survey, *see id.* ¶¶ 9–11; and how many attorneys fell within each "group" denoting years of practice for purposes of comparison to the USAO Matrix, *see id.* ¶¶ 12–13. For this reason, the

court finds her survey unpersuasive. Thus, Dr. Berger's survey does not qualify as "satisfactory evidence" of the prevailing market rate.

Thus far, then, the court finds that the evidence presented by Plaintiff falls short of meeting her initial burden to establish "the prevailing market rates in the relevant community for attorneys of comparable skill, experience, and reputation," in the manner required by *Reed*. *See* 843 F.3d at 521. But there is one more area of evidence to consider. Plaintiff makes the argument expressly passed over by the court in *Reed*, namely, that 75% of the applicable *Laffey* or USAO Matrix rates are insufficient to attract competent counsel to take on IDEA cases and, as such, are unreasonable. *See* Pl.'s Mot. at 12 ("'[A] "reasonable" fee is a fee that is sufficient to induce a capable attorney to undertake the representation.' *Perdue v. Kenny A*, 559 U.S. 542, 552 (2010). Rates lower than those requested by [Plaintiff], such as the 75% *Laffey* rates . . . do not induce capable attorneys to represent indigent clients with good cases."); *Reed*, 843 F.3d at 524 (declining to reach argument because it was "not clearly presented to or fully considered by the District Court"). This method of proof, which the Circuit seemed to implicitly recognize in *Reed*, *see Cox*, 264 F. Supp. 3d at 141 n.3, in a sense differs from the argument made above: Instead of attempting to establish the *actual* prevailing market rate, this method seeks to show what the prevailing market rate *should be* in order to achieve the objective of the fee-shifting statute, i.e., to attract competent counsel, *cf. Reed*, 843 F.3d at 527 (Tatel, J., concurring) ("Attorneys seeking compensation under the [IDEA] are entitled to reasonable fees." (citing 20 U.S.C. § 1415(i)(3)(B)(i))); *id.* ("A reasonable fee is 'one that is adequate to attract competent counsel . . .'" (quoting *Blum*, 465 U.S. at 897)). Thus, here, Plaintiff tries to prove not that the USAO Matrix rates are in fact the current prevailing market rates for IDEA practitioners, but rather that the USAO Matrix rates must be treated as the

prevailing market rate for purposes of calculating the lodestar in IDEA cases in order to attract competent counsel.

The court finds that the evidence submitted in support of that argument does not satisfy Plaintiff's initial burden of establishing that the USAO Matrix rates should be treated as the prevailing market rates. But even if she has met her burden, Defendant has come forward with evidence that rebuts that showing.

Once more, Plaintiff offers several types of evidence in support of her argument. First, she offers the declarations of five attorneys who practice in this jurisdiction (including her own counsel), all of whom "claim that potential IDEA clients were turned away because the attorney could not afford to represent them." Def.'s Opp'n at 13; *see* Pl.'s Mot. at 12–13; *see also* Ostrem Decl. ¶¶ 12–15; Tyrka Decl. ¶¶ 13–48; Pl.'s Mot., Ex. 8, Verified Statement of Maria G. Mendoza, ECF No. 27-9 [hereinafter Mendoza Decl.], ¶¶ 8–12; Pl.'s Mot., Ex. 9, Verified Statement of Domiento C.R. Hill, ECF No. 27-10 [hereinafter Hill Decl.], ¶¶ 3–9; Pl.'s Mot., Ex. 10, Verified Statement of Diana M. Savit, ECF No. 27-11 [hereinafter Savit Decl.], ¶¶ 6–8.

Additionally, Plaintiff relies upon two exhibits submitted in support of a fees petition in another IDEA case in this district: *Thomas*, 908 F. Supp. 2d 233. *See* Pl.'s Mot. at 12–13; *see also* Pl.'s Mot., Ex. 14, Verified Statement of Nicholas Ostrem, ECF No. 27-15 (noting the District's "routine[] fail[ure]" to timely process and pay invoices); Pl.'s Mot., Ex. 15, Letter of Decision, ECF No. 27-16 (describing a 2012 investigation by the Office of the State Superintendent of Education, which found that during a one-year period, DCPS waited more than 120 days to effect payment of attorneys' fees in at least 72 of 401 IDEA settlement agreements). This evidence, Plaintiff says, led the district court in *Thomas* to acknowledge the "acute financial challenges currently faced by special education lawyers in the District" due to the District's pattern of

avoiding payment for attorney's fees "to victorious counsel at all costs."  Pl.'s Mot. at 12–13

(quoting *Thomas*, 908 F. Supp. 2d at 245–46).  The *Thomas* court found this evidence relevant to

the fee inquiry because "the District's consistently dismal track record compel[led] the conclusion

that higher fees may need to be awarded in [IDEA] cases in order to ensure that competent counsel

continue[] to be attracted to [IDEA] litigation."  Pl.'s Mot. at 13 (quoting *Thomas*, 908 F. Supp.

2d at 246).  Plaintiff urges this court to reach the same conclusion here.  *See id.* at 12–13.

Lastly, Plaintiff points to DCPS's own statistics, showing that "parent attorneys filed 3,261

administrative complaints for parents and students" in 2007–2008, "before the District began

refusing to settle cases and began arguing for 75% rates," but filed only 457 in 2014–2015.  Pl.'s

Mot. at 14 (citing *IDEA Section 618 Data Products: State Level Data Files*, U.S. Dep't of Educ.,

https://www2.ed.gov/programs/osepidea/618-data/state-level-data-files/index.html);  *see*  *also*

Tyrka Decl. ¶ 31.  This downward trend, Plaintiff claims, is attributable to the diminished

availability of counsel to represent non-hourly-paying IDEA clients.  *Cf.* Pl.'s Mot. at 14.  To

further support the argument, Plaintiff cites a report filed in 2014 by a class-action monitor in

*Blackman v. District of Columbia*, No. 97-cv-1629 (D.D.C.), ECF No. 2428 [hereinafter *Blackman*

Report].  In the report, the monitor observed:  "The number of attorneys who represent primarily

an indigent clientele has declined over the years and several have communicated with the Court

Monitor and attributed their abandonment of the special education practice or the representation

of indigent parents to the District's attorney fee payment policies."  *See id.* at 32.

Defendant does not directly challenge Plaintiff's evidence.  *See* Def.'s Opp'n at 13.  Rather,

Defendant points to its own evidence, which it contends is sufficient to rebut the "presumption of

reasonableness" of Plaintiff's proposed hourly rate.  *See id.* at 13–14; *Covington*, 57 F.3d at 1109–

10.  Specifically, Defendant offers the declaration of Floyd Hayes, who serves as the Financial

Program Analyst in the DCPS Office of General Counsel and processes attorneys' fees requests in IDEA cases. *See* Def.'s Opp'n at 13–14; Def.'s Opp'n, Ex. 2, Decl. of Floyd Hayes, ECF No. 29-2 [hereinafter Hayes Decl.], ¶¶ 2–3. Hayes's declaration includes statistics regarding the number of invoices that were settled and the amount of attorneys' fees that were requested and ultimately paid, for fiscal years 2014, 2015, and 2016, respectively. Hayes Decl. ¶ 4; *see id.* at 3–5. Those statistics are as follows: DCPS settled 241 of the 303 attorneys' fees invoices it received in fiscal year 2014; 212 of the 310 invoices it received in fiscal year 2015; and 173 of the 234 invoices it received in fiscal year 2016. *Id.* ¶¶ 5–7. In each case, *all* of the invoices that were settled were settled at 75% of the USAO *Laffey* Matrix rate. *Id.*

Defendant argues that these statistics both demonstrate that the *actual* prevailing market rate for attorneys practicing IDEA litigation in the District is 75% of the applicable *Laffey* or USAO Matrix rate, and show that this rate is sufficient to attract competent counsel. Def.'s Opp'n at 14. As to the latter, the court agrees. Defendant's evidence shows that even though DCPS consistently has agreed only to pay 75% of the USAO *Laffey* Matrix rates in each case where the parties have reached an agreement on attorneys' fees during the past few years, plaintiffs' counsel have continued to represent clients in IDEA cases in the District and to agree to such rates. Indeed, IDEA counsel have agreed to such rates in a clear majority of cases, at least where a settlement was reached. *See* Hayes Decl. ¶ 5 (approximately 80% of invoices resulting in settlement for 75% rate in FY 2014); *id.* ¶ 6 (approximately 68% in FY 2015); *id.* ¶ 7 (approximately 74% in FY 2016). Admittedly, the fact that Plaintiff is able to point to a handful of attorneys who have found these rates to be too low to allow them to maintain a full-time practice serving almost exclusively non-paying IDEA clients is not insignificant. It is also true, as Plaintiff asserts, that settlements may be an inexact proxy for the prevailing rate for a variety a reasons, including that some lawyers

"may find it necessary to accept something in the short term, to keep the lights on," in lieu of protracted litigation. Pl.'s Reply at 10. But at the end of the day, Defendant's statistics undermine Plaintiff's largely anecdotal evidence that Defendant's rates "have resulted in the broad evacuation of competent counsel from IDEA litigation." *See id.* at 11.[6]

This conclusion is only reinforced by the relative subjectivity of Plaintiff's own proof. For example, some of Plaintiff's declarations show that counsel continues to pursue IDEA work and accept the 75% USAO Matrix rate, despite the financial difficulty it may impose. *See* Hill Decl. ¶ 9; *cf. Cox*, 264 F. Supp. 3d at 141 n.3. In addition, the reasons stated for taking on less non-paying IDEA work in many of the declarations focus primarily on reasons *other* than the rate itself, such as the District's refusal to pay. *See, e.g.*, Ostrem Decl. ¶¶ 12, 14–15; Tyrka Decl. ¶¶ 14–48; Savit Decl. ¶ 6; Mendoza Decl. ¶¶ 9–12. And Plaintiff's evidence that directly discusses the rate does so in an entirely conclusory manner. *See, e.g.*, Moran Decl. ¶ 12; Nabors Decl. ¶ 10; Mendoza Decl. ¶¶ 9–10; *cf. Reed*, 843 F.3d at 525 (holding, at least with respect to a showing of complexity, that a fee applicant could not satisfy her burden by relying on "[m]ere conclusory statements that IDEA litigation is 'as complex' as other types of cases" without an explanation of "*why* this is so").

The same is true of the complaints of the special education attorneys' roundtable discussed in the *Blackman* class-action monitor's report for the 2012–2013 school year. *See, e.g.*, *Blackman* Report at 32 (noting that members of the roundtable "believe that the decline in the number of due process complaints is the result of a concerted effort on the part of the District to limit their

---

[6] In her reply brief, Plaintiff asserts that Defendant is foreclosed from arguing that its rates are sufficient to attract competent counsel by the doctrine of issue preclusion. Pl.'s Reply at 11. That is a strange argument. While Plaintiff claims the issue was "actually determined" by the court in *Thomas*, *see id.*, that case was decided in 2012 and Defendant's statistics post-date that decision. In other words, the "issue" of whether Defendant's rates are sufficient to attract competent is clearly an evolving one. Moreover, Plaintiff cites no case for the proposition that issue preclusion operates in fees litigation. The court therefore rejects this argument.

representation of parents by refusing to pay reasonable attorneys['] fees *in a timely manner*" (emphasis added)).  Moreover, the monitor's observations are based only on anecdotal evidence—rather weak proof when compared to the statistical analysis supplied by the District.

And finally, although Plaintiff's statistical evidence shows that markedly fewer administrative complaints have been filed by IDEA attorneys in recent years, the court cannot conclude that the decrease is the result of the availability of fewer lawyers to take on IDEA cases. Indeed, Plaintiff does not show that the reduction in administrative complaints is directly—let alone primarily—attributable to the hourly rate, as opposed to other factors.  In other words, Plaintiff's evidence supports correlation, but not necessarily causation.  While the D.C. Circuit has yet to define the precise contours of a fee applicant's evidentiary burden to demonstrate the prevailing market rate, *see Flood*, 172 F. Supp. 3d at 206, the court finds Plaintiff's evidence falls short of "satisfactory evidence" in this case, *see Eley*, 793 F.3d at 100.  Plaintiff has not shown that there is an unmet need for IDEA representation in the District of Columbia or, even if there is, that the reason for the unmet need is that the 75% USAO Matrix rates are insufficient to attract competent IDEA counsel.

In sum, Plaintiff has not shown that the USAO Matrix rates represent the prevailing market rates in the relevant community for IDEA attorneys with skill, experience, and reputation comparable to that of her counsel.  Thus, the court finds the prevailing rates for IDEA litigation in the District of Columbia are equivalent to 75% of the applicable USAO matrix, as defined below.

### 2.    *Current v. Historical Rate*

The court's conclusion that the prevailing market rate is 75% of the applicable USAO matrix begs the question: Which USAO Matrix should the court apply, and when?  Plaintiff asks the court to apply the USAO Matrix for the year 2016–2017, i.e., the *current* market rates.  *See*

Pl.'s Mot. at 14–15; USAO Matrix. Plaintiff asserts that the delay in receiving her fee award warrants the application of current rates. *See* Pl.'s Mot. at 14–15; Pl.'s Reply at 11–12. Defendant opposes this request. *See* Def.'s Opp'n at 15–17. Defendant maintains that the court should instead apply the matrix rates that were applicable at the time the services were performed. *Id.* at 15. If the court were to adopt Defendant's approach, it would apply the USAO *Laffey* Matrix for years 2003–2014, the USAO *Laffey* Matrix for years 2014–2015, the USAO Matrix for the year 2015–2016, and the USAO Matrix for the year 2016–2017, depending on the years in which Ostrem's and Tyrka's services were performed for Plaintiff and V.J. *See id.* at 19–22; Def.'s Opp'n, Ex. 3, ECF No. 29-3.

The Supreme Court has condoned the use of current rates in calculating a reasonable fee award in order to account for a delay in payment "several years after the services were rendered." *Missouri v. Jenkins*, 491 U.S. 274, 283–84 (1989). So, too, has the D.C. Circuit. In a case involving Title VII's fee-shifting provision, the D.C. Circuit explained:

> Title VII provides that prevailing parties may recover a "reasonable attorney's fee as part of the costs." . . . . The Supreme Court has held that there is strong presumption that the fee yielded by the now-ubiquitous "lodestar" method, which bases fees on the prevailing market rates in the relevant community, is reasonable. But in Title VII cases like this one, attorneys are often not paid until long after services are rendered, and "payment today for services rendered long in the past deprives the eventual recipient of the value of the use of the money in the meantime . . . ."

*West v. Potter*, 717 F.3d 1030, 1033–34 (D.C. Cir. 2013) (citations omitted). Accordingly, "if the district court determines that the historic rates used in calculating the lodestars do not adequately compensate the plaintiffs for the expected delay in receipt of payment, it may consider whether the use of current market rates would produce a reasonable fee . . . without generating a windfall for the plaintiff's attorneys." *Murray v. Weinberger*, 741 F.2d 1423, 1433 (D.C. Cir. 1984).

Courts in this district routinely apply the foregoing principles to determine whether current rates should be used in calculating a reasonable fee under the IDEA's fee-shifting provision. *See, e.g.*, *D.L.*, 267 F. Supp. 3d at 68, 72–73; *McNeil v. District of Columbia*, 233 F. Supp. 3d 150, 157 n.11 (D.D.C. 2017); *Reed v. District of Columbia*, 134 F. Supp. 3d 122, 136–37 (D.D.C. 2015), *aff'd in part, rev'd in part on other grounds*, 843 F.3d 517 (D.C. Cir. 2016); *Thomas*, 908 F. Supp. 2d at 248–49; *Fisher v. Friendship Pub. Charter Sch.*, 880 F. Supp. 2d 149, 155 (D.D.C. 2012). This court does the same here.

In this case, the delay in payment is over five years, when measured from the date Plaintiff retained Ostrem, *see* Billing Itemization at 1, and over three years, when measured from the date Plaintiff retained Tyrka, *see id.* at 36. Although other judges in this district have found a three-year delay to be insufficient to warrant the application of current rates, *see, e.g.*, *Reed*, 134 F. Supp. 3d at 136–37, this court, exercising its discretion, reaches the opposite conclusion, *see West*, 717 F.3d at 1034; *cf. Murray*, 741 F.2d at 1433 ("Current market rates have been used in numerous cases to calculate the lodestar figure when the legal services were provided over a multiple-year period and when use of the current rates does not result in a windfall for the attorneys."). In this case, "several years" have already passed since the services were rendered, and "the economic premise behind the Supreme Court's holding in *Jenkins* . . . was that it is only fair to award attorneys the present value of the services that they rendered." *Thomas*, 908 F. Supp. 2d at 249. And while this court found evidence of the District's track record of delaying or altogether avoiding the payment of attorneys' fees not to be very probative in determining the prevailing market rate, such evidence carries greater weight here. *Cf. West*, 717 F.3d at 1033–34 (noting that dilatory conduct may be an appropriate factor to consider in determining whether compensation for delay should be awarded). Moreover, Defendant offers no evidence to refute Plaintiff's

evidence.  Applying the current rates also would not result in an unreasonable fee here because it would not result in a windfall for the attorneys.  *See West*, 717 F.3d at 1033; *Murray*, 741 F.2d at 1433.

Defendant attempts to distinguish the cases that discuss when a delay in payment may warrant the application of current rates by reasoning that, unlike in those cases, the relevant IDEA fee-shifting provision prohibits the use of multipliers in calculating fee awards.  Def.'s Opp'n at 15 (citing 20 U.S.C. § 1415(i)(3)(C)).  But, contrary to Defendant's understanding, those cases make clear that delay is not exclusively a question of fees enhancement.  Take *Murray*, for example.  Defendant asserts that in *Murray*, "the D.C. Circuit remanded the case because the district court failed to explain why it awarded multipliers of the lodestar figure."  Def.'s Opp'n at 15.  True enough.  *See Murray*, 741 F.2d at 1429, 1432–33.  But in offering guidance to the district court on remand, the court explained:

> If the district court recalculates the lodestar figure to incorporate current rates, then an enhancement of the lodestar to account for delay is not appropriate in this case.  In *Copeland v. Marshall* [641 F.2d 880, 893 n.23 (D.C. Cir. 1980)] we stated that an increase for delay is generally *not* appropriate "if the 'lodestar' itself is based on *present* hourly rates, rather than the lesser rates applicable to the time period in which the services were rendered."  Likewise, we noted in *National Association of Concerned Veterans v. Secretary of Defense* [675 F.2d 1319, 1329 (D.C. Cir. 1982)] that "where the hourly rate used in computing the lodestar is based on present hourly rates a delay factor has implicitly been recognized and no adjustment for delay should be allowed."  The principle stated in these two decisions applies to the instant case.

*Id.* at 1433.  Thus, the court in *Murray* squarely distinguished between relying on delay to base an award on current rates, as opposed to relying on delay to *enhance* the lodestar amount.

More recently, in *Perdue v. Kenny A. ex rel Winn*, the Supreme Court noted that in many cases, where attorneys "presumably understand[] that payment of fees will generally not come

until the end of the case, if at all," compensation for such delay "is generally made 'either by basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value,'" 559 U.S. 542, 556 (2010) (quoting *Jenkins*, 491 U.S. at 282).  The Court did not rule out the possibility, however, that "an *enhancement* may be appropriate where an attorney assumes these costs in the face of unanticipated delay."  *Id.* (emphasis added).  In short, these cases indicate that using current rates when calculating the lodestar may be appropriate to account for a delay in payment.

Thus, given the passage of time since Plaintiffs' lawyers rendered their services, the court will use current USAO Matrix rates to calculate Plaintiff's fee award.[7]

### 3. *Rate for Fees-on-Fees*

Defendant also argues that the hourly rate for the time spent preparing Plaintiff's fee petition (i.e., "fees-on-fees") should be awarded at 50% of the applicable rate.  *See* Def.'s Opp'n at 18, 20–22.  "IDEA litigants are entitled to receive compensation for the hours expended pursuing an initial fee award in District Court."  *Reed*, 843 F.3d at 526.  Although the D.C. Circuit "has yet to determine whether all aspects of IDEA litigation should be treated as a unified whole, subject to the same prevailing market rate," *id.*, "courts in this jurisdiction have concluded that 'a successful fee applicant seeking fees-on-fees [need not] demonstrate anew the reasonableness of her proposed rate for time expended in her successful fee application,'" *McNeil*, 233 F. Supp. 3d at 154 (quoting *Kelsey v. District of Columbia*, 219 F. Supp. 3d 197, 205 (D.D.C. 2016)).  This court agrees with that principle.

---

[7] The court, however, finds it inappropriate to order Defendant to pay "an additional $1,000 for each delay of a month or part thereof in payment."  Pl.'s Mot. at 15.  Plaintiff raises this request in passing in the conclusion section of her fees petition, and cites only one case in which a court has awarded post-judgment interest in advance of a possible future delay in payment.  *See id.* (citing *Cook v. District of Columbia*, 115 F. Supp. 3d 98, 107 (D.D.C. 2015)).  *Cook* is not binding on this court, and the court does not find it persuasive here.

While Defendant points to other cases in this jurisdiction that have applied an hourly rate equal to 50% of the *Laffey* rate, *see* Def.'s Opp'n at 18 (citing cases), the court finds those cases unpersuasive. All of those decisions were issued prior to *Reed*, where the court upheld the district court's decision to apply the same hourly rate to fees-on-fees. 843 F.3d at 526–27. The district court in *Reed* "held that it would abide by its earlier determination that the appropriate prevailing market rate . . . was 75% of the USAO *Laffey* rate, declining to 'enter the labyrinth' of determining the appropriate rate anew." *Id.* at 523 (citation omitted). On appeal, the D.C. Circuit held that the district court did not abuse its discretion in so holding, as the plaintiffs "fail[ed] to submit evidence of any meaningful difference between these two types of litigation." *Id.* at 527. So it is here. There is no evidence in the record to support any meaningful difference in the market rate for substantive work as opposed to fees-on-fees. If anything, the record evidence suggests there is no difference. *See* Pl.'s Reply at 7–9.

Thus, the court will apply the same prevailing market rate (75% of the USAO Matrix rate) to calculate Plaintiff's fees-on-fees. To hold otherwise would "increase the burden on the courts and unnecessarily protract the litigation without advancing the goals of IDEA." *McNeil*, 233 F. Supp. 3d at 155.

### B.    Reasonableness of Copying Costs

At last, the court turns to Defendant's final objection: the reasonableness of the rate at which Plaintiff seeks reimbursement for copying costs. Attorneys are entitled to "all expenses associated with the litigation that [they] would normally expect to pass on to fee paying clients, so long as the costs are reasonable." *Cox*, 264 F. Supp. 3d at 150 (internal quotation marks omitted). Thus, an award of costs for copying typically is included in fees awards. *See id.*

According to Plaintiff's counsel's invoice, Ostrem incurred $0.25 per page in copying

costs.  *See* Billing Itemization at 34–35.  In his declaration, Ostrem states that the copying charges were "billed at the same rate authorized by the District of Columbia Superior Court for use by court-appointed special education attorneys."  Ostrem Decl. ¶ 9.  "Courts in this district, however, have held that $0.25 per page is an excessive rate."  *Reed*, 134 F. Supp. 3d at 136.  Rather, as Defendant correctly points out, courts in this district generally have found that such costs should be reimbursed at the rate of $0.15 per page.  *See* Def.'s Opp'n at 18–19 (citing cases); *see also Cox*, 264 F. Supp. 3d at 152–53.  Thus, the court will award the costs of copying fees at this lesser rate.

*     *     *

In summary, after considering the evidence submitted by the parties, the court finds Plaintiff has not carried her burden to show that the full USAO Matrix rates she requests are the prevailing market rates in the relevant community for IDEA attorneys of comparable skill, experience, and reputation as her counsel.  Instead, as explained above, the Court will award fees in this case at 75% of the current USAO Matrix rates.  Accordingly, the court awards fees at the current hourly rate of $249, $254.25, and $296.25, respectively, for Ostrem, depending on the level of experience he had at the time the services were performed,[8] and an hourly rate of $387 for Tyrka.  The time spent preparing Plaintiff's fees petition will also be multiplied by these hourly rates.  The attorneys will be reimbursed at one-half the applicable hourly rate for travel time: $166,

---

[8] Although the court uses 75% of the current rates reflected in the USAO Matrix to calculate Plaintiff's fee award, it uses the current rates that would have been applicable to each attorney based on his level of experience.  So, for example, although Ostrem had roughly 9 years of experience in May 2017 when he billed his last hours, *see* Def.'s Opp'n at 21, the court will not apply the current USAO Matrix rate of $296.25 (75% of $395) for attorneys with 8–10 years of experience to hours Ostrem billed in February 2013, when he had only roughly 4 years of experience, *see id.*  In that case, the court will apply the applicable current USAO Matrix rate of $249 (75% of $332) for attorneys with 4–5 years of experience.  *See* USAO Matrix.  Similarly, for the time period in which Ostrem had only 6–7 years of experience, the court will use the USAO Matrix rate of $254.25 (75% of $339) to calculate his fees.  *See id.*  This does not apply to Tyrka, who fell within the same experience group (16–20 years) throughout the litigation.

$169.50, and $197.50 for Ostrem, respectively, and $258 for Tyrka. *See Bucher v. District of Columbia*, 777 F. Supp. 2d 69, 77 (D.D.C. 2011) ("In this circuit, travel time generally is compensated at no more than half the attorney's appropriate hourly rate." (internal quotation marks omitted)).

With respect to Tyrka and Ostrem's expenses, the court awards Plaintiff the full amount she seeks, with the exception of Ostrem's copying costs. The court reduces those costs to $0.15 per page.

The total fees and costs award breakdown is as follows:[9]

|  |  |
|---|---|
| Ostrem: | $37,585.28 ($37,110.30 in fees and $474.98 in costs) |
| Tyrka: | $37,701.50 ($37,216.50 in fees and $485 in costs) |
| Total: | $75,286.78 |

## V. CONCLUSION

For the foregoing reasons, the court grants in part and denies in part Plaintiff's Motion for Attorney's Fees, ECF No. 27, and awards $75,286.78 in attorneys' fees and costs under the IDEA. A separate order accompanies this Memorandum Opinion.

Dated:  March 23, 2018

Amit P. Mehta
United States District Judge

---

[9] The court arrived at the total fees amount by multiplying the hourly rates discussed above by the hours reflected in Plaintiff's counsel's invoice, *see* Billing Itemization; Pl.'s Reply, Ex. 1, ECF No. 32-1. *See generally* Def.'s Opp'n at 19–25.  If Plaintiff believes the court has erred in calculating the number of hours expended, the court welcomes a motion to modify the judgment.  Plaintiff shall file such motion no later than 14 days from this date.